**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| STEVEN B. TRAINER, | : | Civil Action No. 12-2409 (SDW) |
| | : | |
| Plaintiff, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | **AND ORDER** |
| ROBERT ANDERSON et al., | : | |
| | : | |
| Defendants. | : | September 17, 2012 |
| | : | |

**WIGENTON,** District Judge.

IT APPEARING THAT:

1.    Plaintiff submitted for filing a civil complaint ("Complaint") and his application to proceed in this matter in forma pauperis.[1]  See Docket Entries Nos. 1 and 1-1.  Since Plaintiff's Complaint failed to comply with the requirements of Rules 8, 18 and 20, this Court directed re-pleading.  See Docket Entry No. 2.

2.    Plaintiff duly complied by filing his amended complaint ("Amended Complaint"), see Docket Entry No. 4, and moved for reopening of this matter.  See Docket Entry No. 5.

3.    The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune

---

[1]  The Court granted Plaintiff in forma pauperis status.  See Docket Entry No. 2.

from such relief.  See 28 U.S.C. § 1915(e)(2)(B).  Ashcroft v. Iqbal, 556 U.S. 662 (2009),

hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in

Conley v. Gibson, 355 U.S. 41, 45-46 (1957), which was previously applied to determine

if a federal complaint stated a claim.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d

Cir. 2009).  The pleading standard under Rule 8 was refined by the United States

Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v.

Iqbal, 556 U.S. 662 (2009), where the Supreme Court clarified as follows:

> Two working principles underlie our decision in Twombly.  First, the tenet
> that a court must accept as true all of the allegations contained in a
> complaint is inapplicable to legal conclusions. Threadbare recitals of the
> elements of a cause of action, supported by mere conclusory statements,
> do not suffice . . . .  Rule 8 marks a notable and generous departure from
> the hyper-technical, code-pleading regime of a prior era, but it does not
> unlock the doors of discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a plausible claim for
> relief survives a motion to dismiss.  Determining whether a complaint
> states a plausible claim for relief will . . . be a context-specific task that
> requires the reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct, the complaint has
> alleged-but it has not "show[n]" - "that the pleader is entitled to relief."
> Fed. R Civ. P 8(a)(2).
> In keeping with these principles a court considering a motion to dismiss
> can choose to begin by identifying pleadings that, because they are no
> more than conclusions, are not entitled to the assumption of truth.  While
> legal conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S. Ct. at 1949-50 (citations omitted).  Since Iqbal, the Third Circuit has

required district courts to conduct a three-part analysis when reviewing a complaint for

dismissal for failure to state a claim:

> To determine the sufficiency of a complaint under the [Iqbal] pleading regime . . . , a court must take three steps: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947.  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 1950.  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Id.

Santiago v. Warminster Twp., 629 F. 3d 121, 130 (3d Cir. 2010) (footnote omitted).  The

Court, however, is mindful that the sufficiency of this pro se pleading must be construed

liberally in favor of the plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89,

94 (2007).

4.      Plaintiff's Amended Complaint asserts the following:

a.      On October 21, 2010, Julie Feliciano ("Feliciano") was walking on Church Street,

in the Borough of Lodi, New Jersey, when she was suddenly approached by a

vehicle, the driver of which grabbed Feliciano's "Coach" brand purse (containing

her credit cards and identification documents) and swiftly drove away, causing

Feliciano to fall on the ground as a result of the attack.  See Docket Entry No. 4, at

5; accord Docket Entry No. 1, at 29.  Feliciano reported the incident to police.

See id.  According to the Amended Complaint, she identified the perpetrator as a

"light-skin[ed] . . . black or Hispanic male" and described the perpetrator's car as

a "light-medium blue" vehicle "similar to Toyota RAV-4."  Docket Entry No. 4,

at 5.  Feliciano also stated to the police her belief that the perpetrator had "facial

beauty marks" and "short black hair."  Id.  The Amended Complaint also clarifies

that a surveillance tape of the aforesaid events (which was available to police

because the robbery took place next to a shopping unit equipped with a

surveillance camera) indicated that the vehicle used by the perpetrator was akin to

a "silver Jeep Liberty."[2] Id.

b.    The Amended Complaint also maintains that, after giving her statement to the

police, Feliciano was offered a photo array of potential suspects (with Plaintiff

being one of them) and identified Plaintiff as the perpetrator during her second

review of the photographs.  See id. at 6.  Plaintiff opines that Feliciano's

identification of him could have been a result of unspecified "suggestive"

practices utilized by the police but does not state any facts in support of his

conclusion.   The Amended Complaint also asserts that Feliciano accompanied her

aforesaid identification of Plaintiff with a statement that she was about "80%"

certain as to the correctness of her identification, but the fact that the photograph

of Plaintiff existing in police files had him depicted bald and without beauty

marks left her about 20% uncertain.  See id.

c.    According to the Amended Complaint, on the basis of the information obtained

from Feliciano's post-crime statements and Feliciano's identification of Plaintiff,

police officer Bertone ("Bertone") prepared a complaint seeking a warrant for

Plaintiff's arrest, and police officer Martin ("Martin") affirmed the same and

---

[2]  The Toyota RAV4 and Jeep Liberty have features making them rather similar in appearance, especially in some models of these vehicles.  See, e.g., 2007 Toyota RAV 4, Automobile Mag,
http://www.automobilemag.com/am/2007/toyota/rav4/exterior_pictures/front_driver_side_view.html (last visited Sept. 6, 2012); 2007 Jeep Liberty,
http://autos.msn.com/research/vip/overview.aspx?year=2007&make=Jeep&model=Liberty (last visited Sept. 6, 2012).

submitted it to the local municipal court for issuance of an arrest warrant, which was, apparently, duly issued by that court and directed Plaintiff's arrest. See id.

d.    The Amended Complaint also alleges that, in the course of executing said arrest warrant, police officers Anderson ("Anderson"), Stine ("Stine"), and Farrell ("Farrell") arrived to Plaintiff's residence and observed a 2006 Hyundai Santa Fe SUV[3] parked at Plaintiff's property; eventually, it was determined that the vehicle was registered to Fe Alma Agbayani ("Agbayani"). See id. at 7. Seeing Plaintiff exiting his residence, Anderson, Stine, and Farrell arrested him pursuant to the warrant. See id. at 8. Plaintiff maintains that the physical force exercised by these three officers exceeded that necessary to effectuate said arrest.[4] See id. at 8-9. Plaintiff also maintains that Martin and Bertone, being in very close proximity to the site of arrest, observed but did not interfere with the alleged use of excessive force. See id. at 9-10.

5.    On the basis of the foregoing, Plaintiff alleges that Martin, Bertone, Anderson, Stine, Farrell, and "Doe" violated his rights by: (a) executing his arrest without probable cause;

_____

[3] The 2006 Hyundai Santa Fe SUV has features making it somewhat similar to the Toyota RAV4 and Jeep Liberty. See, e.g., 2006 Hyundai Santa Fe, http://consumerguideauto.howstuffworks.com/2006-hyundai-santa-fe.htm (last visited Sept. 6, 2012).

[4] While Plaintiff asserts that he was not resisting arrest, his Amended Complaint also indicates that, right after Plaintiff was taken into custody, a certain police officer executed documents charging Plaintiff with resisting arrest and assaulting officer Stine during execution of the warrant. See Docket Entry No. 4, at 4 (reflecting Plaintiff's assertion of a "false arrest" claim against the officer who prepared the charge, which officer was identified as "John Doe Badge # 233").

(b) subjecting him to excessive force; and (c) unduly taking possession of the 2006

Hyundai Santa Fe SUV.   Under legal theories, he seeks $100,000 from each officer

identified by name and the same amount from "Doe."  See id. at 12-13.

6.      Plaintiff's challenges against Martin and Bertone suggest a Fourth Amendment claim

based on an undue procurement of Plaintiff's arrest warrant (which is a claim corollary to

that of false arrest).[5]  See James v. Superior Court, 2008 U.S. Dist. LEXIS 60441, at *23

(D.N.J. Aug. 7, 2008) (so observing).  This claim is facially without merit.  A litigant

who challenges the validity of a search warrant on the basis that a law enforcement agent

submitted a false statement must satisfy the two-part test of Franks v. Delaware, 438 U.S.

154, 155-56 (1978).  See Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997).

Specifically, the litigant must prove by a preponderance of evidence that the state agent

knowingly and deliberately, or with reckless disregard for the truth, made false statements

in applying for a warrant, and that the false statements were material or necessary to the

probable cause finding.  See id.  The validity of probable cause is assessed under the

"totality of circumstances" test.  See, e.g., Hunter v. Bryant, 502 U.S. 224, 228 (1991);

Illinois v. Gates, 462 U.S. 213, 238 (1983); U.S. v. Stearns, 597 F.3d 540, 555 (3d Cir.

---

[5]  A claim of false arrest (and the accompanying claim for false imprisonment) accrues
immediately upon the arrest at issue.  Hence, the injury of false arrest/false imprisonment can be
based solely on the events/restraint that takes place from the moment of arrest and until the
moment of arrestee being held pursuant to legal process, e.g., arraignment.  See Wallace v. Kato,
549 U.S. 384 (2007); Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir. 1998) (a claim for
false arrest, "covers . . . only . . . the time of detention until the issuance of process or
arraignment, and not more," citing Heck v. Humphrey, 512 U.S. 477, 484 (1994)).  "Thereafter,
unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious
prosecution, which remedies detention accompanied, not by absence of legal process, but by
wrongful institution of legal process."  Wallace, 549 U.S. at 389-90 (citations and footnote
omitted).

2010); Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997).  Here, the totality of circumstances weigh against Plaintiff.  Feliciano identified him with "80%" probability, a vehicle appearing similar to the one used by perpetrator was parked on Plaintiff's property and Plaintiff's features, short of beauty marks and short hair (both of which were, allegedly, lacking on his photograph contained in the police photo array) were matching the description Feliciano gave to police.[6]  Therefore, under the "totality of circumstances" test, police had probable cause to believe that Plaintiff was the perpetrator and, thus, a valid basis to seek warrant for his arrest.[7]  In other words, while Plaintiff believes that *every* aspect of Feliciano's descriptions had to match his and his vehicle appearance to "a Tee," no such precision was required for the officers to develop a valid basis for probable cause.

> Probable cause "requires more than mere suspicion.  Orsatti[ v. New Jersey State Police], 71 F.3d [480,] 482 [ (3d Cir. 1995)].  However, it does not "require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Adams v. Williams, 407 U.S. 143, 149 (1972).  Rather, "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an

---

[6] Indeed, the fact that Plaintiff was pictured without "short hair" or beauty marks on the photo array photograph was not necessarily indicative of Plaintiff's innocence, despite Plaintiff's contention.  For instance: (a) Plaintiff might have had his head clean-shaved at the time the photograph was taken but had grown a small amount of hair later, e.g., on a temporary, occasional basis (or he could even wear a wig during later points in time); and (b) Plaintiff might have had no facial beauty marks at the time the photograph was taken (or the photograph may be too small to capture such fine details) but have such beauty marks developed later (e.g., as a result of age, tanning or tattooing) or applied through the use of make-up.

[7] No statement made in this Memorandum Opinion and Order shall be construed as expressing this Court's position that Plaintiff was or was not the perpetrator of the robbery at issue.  Resolution of all criminal charges against Plaintiff fall solely and exclusively within the province of the state court presiding over Plaintiff's criminal prosecution.

offense has been or is being committed by the person to be arrested."
Orsatti, 71 F.3d at 483; see also Wilson v. Russo, 212 F.3d 781, 789 (3d
Cir. 2000) ("Probable cause exists if there is a [mere] 'fair probability' that
the person committed the crime at issue" (citation omitted)).  . . .  In
analyzing whether probable cause existed for an arrest, we must take a
"totality-of-the-circumstances approach." Illinois v. Gates, 462 U.S. 213,
230 (1983).

Reedy v. Evanson, 615 F. 3d 197, 211 (3d Cir. 2010); accord Virginia v. Moore, 553 U.S.

164, 171 (2008) ("[w]hen an officer has probable cause to believe a person committed

even a minor crime . . . the balancing of private and public interests is not in doubt [and

t]he arrest is constitutionally reasonable").  Therefore, while the Court cannot rule out the

possibility that Plaintiff might establish, during the course of his criminal prosecution of

the robbery charges, that he was not the perpetrator, Martin and Bertone's procurement of

Plaintiff's arrest warrant did not violate Plaintiff's Fourth Amendment rights for the

purposes of civil challenges at bar.[8]  Correspondingly, all of Plaintiff's challenges to the

validity of his arrest warrant are subject to dismissal for failure to state a claim upon

which relief can be granted.[9]

---

[8]  The Court stresses that the Court's findings made in this *civil rights* matter have no
relation to evidentiary findings that might be made by the state court in the *criminal* proceedings
based on the robbery of Feliciano, be those state court findings a ruling admitting a certain piece
of evidence into the criminal record or a decision directing suppression of evidence.

[9]  The Court notes, in passing, analogous invalidity of Plaintiff's "false arrest" claim
against John Doe.  To the extent Plaintiff asserts that Doe unduly procured an arrest warrant
against Plaintiff on the basis of Plaintiff's assault of Stine (even though Plaintiff was already
arrested on the underlying and related charge of robbery of Feliciano), such "arrest-without-
probable-cause" claim is facially meritless: "[p]robable cause need only exist as to [one of the]
offense[s] that could be charged under the circumstances." Barna v. City of Perth Amboy, 42
F.3d 809, 819 (3d Cir. 1994).  Thus, even if the Court were to presume that Doe wholly
fabricated the charge, Plaintiff's arrest was still legitimate, since it ensued from sufficient
probable cause for Plaintiff's arrest on the robbery charges.  To the extent Plaintiff tries to mount
a malicious prosecution claim against Doe, such a claim is facially unripe *and* meritless.  Under

7.    To the extent Plaintiff challenges the very fact of his arrest by Anderson, Stine, and

Farrell, his claims are facially deficient, since an arrest executed upon a valid warrant is

necessarily solid within the meaning of the Fourth Amendment.  See Harlow v.

Fitzgerald, 457 U.S. 800, 818-19 (1982) (an objectively reasonable officer is protected

from liability for execution of the facially valid arrest warrant).  Hence, challenges based

on Plaintiff's arrest by Anderson, Stine, and Farrell are subject to dismissal for failure to

state a claim upon which relief can be granted.

8.    To the extent Plaintiff strives to state a claim asserting the officers' undue taking of the

2006 Hyundai Santa Fe SUV, that claim is also facially deficient.

a.    To start, since Plaintiff asserts that the 2006 Hyundai Santa Fe SUV was the

property of Agbayani's (rather than Plaintiff's), Plaintiff has standing to challenge

the taking.  Under the "next friend" doctrine, standing is allowed to a third person

so this third person could file and pursue a claim in court on behalf of someone

who is unable to do so on his or her own.  The doctrine dates back to the English

Habeas Corpus Act of 1679 and provides a narrow exception to the "case or

---

New Jersey law, the common law tort elements of a malicious prosecution action arising out of a
criminal prosecution are: (a) the criminal action was instituted by the defendant against the
plaintiff, (b) it was actuated by malice, (c) there was an absence of probable cause for the
proceeding, and (4) the criminal proceeding was terminated favorably to the plaintiff.  See Lind
v. Schmid, 67 N.J. 255, 262 (1975). A plaintiff attempting to state a malicious prosecution claim
must also allege that there was "'some deprivation of liberty consistent with the concept of
seizure.'"  Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998) (quoting Singer v.
Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995)); see also Albright v. Oliver, 510 U.S.
266 (1994).  Here, even if this Court were to presume that Doe falsified his affidavit as to
Plaintiff's assault on Stine, Plaintiff: (a) did not assert that the criminal proceeding based on such
assault was terminated favorably to Plaintiff; and, in any event, (b) Plaintiff's deprivation of
liberty already ensued from the arrest on robbery charges, thus preventing Plaintiff from "re-
losing" the liberty he no longer had.

controversy" requirement set forth in Article III of the Constitution.  <u>See</u>
<u>Whitmore v. Arkansas</u>, 495 U.S. 149, 154-55 (1990).  The <u>Whitmore</u> Court set
out two requirements that should be met by one seeking to qualify for "next
friend" standing: (i) "the 'next friend' must be truly dedicated to the best interests
of the person on whose behalf [(s)he] seeks to litigate"; and (ii) "the 'next friend'
must provide an adequate explanation – such as inaccessibility, mental
incompetence, or other disability – why the real party in interest cannot appear on
his own behalf to prosecute the action." <u>Id.</u> at 163-64; <u>see also</u> <u>Sprint Communs,
Co., L.P. v. APCC Servs.</u>, 554 U.S. 269, 301 (2008) (Roberts, J., dissenting)
("The absence of any right to the substantive recovery means that respondents
cannot benefit from the judgment they seek and thus lack Article III standing.
'When you['ve] got nothing, you['ve] got nothing to lose'") (quoting Bob Dylan,
Like A Rolling Stone, in On Highway 61, Revisited (Columbia Records 1965)).
Here, Plaintiff does not explain why the Court shall deem him "truly dedicated" to
the best interests of Agbayani and, moreover, he provides this Court with no basis
for finding that Agbayani lacks mental capacity to prosecute her own challenges.

b.   Moreover, if this Court were to presume that Plaintiff, somehow, was in rightful
possession of the 2006 Hyundai Santa Fe SUV, the taking of the vehicle was still
valid under the Fourth Amendment since the taking was incident to Plaintiff's
arrests, and it was a seizure of evidence discovered in plain view.  <u>See</u>, <u>e.g.</u>,
<u>Chimel v. California</u>, 395 U.S. 752 (1969).

c.      Moreover, even if the Court were to hypothesize that Plaintiff's arrest did not

supply a valid ground for the taking of the vehicle, and if the Court were to fancy

that Plaintiff had vested interests in the 2006 Hyundai Santa Fe SUV, his claims

are still barred by the New Jersey Tort Claim Act.   An unauthorized deprivation

of property by a state actor, whether intentional or negligent, does not constitute a

violation of the procedural requirements of the Due Process Clause of the

Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is

available.  See Hudson v. Palmer, 468 U.S. 517, 530-36 (1984); accord Parratt v.

Taylor, 451 U.S. 527, 543-44 (1981), overruled in part on other grounds, Daniels

v. Williams, 474 U.S. 327, 328 (1986).  New Jersey does provide a

post-deprivation remedy for unauthorized deprivation of property by public

employees.  See NJTCA, N.J. Stat. Ann. §§ 59:1-1 et seq. (2001); cf. Holman v.

Hilton, 712 F.2d 854, 857 (3d Cir. 1983); Asquith v. Volunteers of America, 1 F.

Supp. 2d 405, 419 (D.N.J. 1998), aff'd, 186 F.3d 407 (3d Cir. 1999).  Because the

NJTCA is an available and adequate post-deprivation remedy providing all the

process which is due, Plaintiff's claim regarding the taking of the 2006 Hyundai

Santa Fe SUV fails to state a valid Section 1983 claim.  In other words, no matter

how the Court were to slice it, Plaintiff's challenges based on the taking of the

vehicle are subject to dismissal for failure to state a claim.

9.      The foregoing analysis leaves the Court solely with Plaintiff's excessive force claims against Anderson, Stine and Farrel, as well as Martin and Bertone.[10]  A viable cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates the Fourth and Fourteenth Amendments to the United States Constitution.  See Graham v. Connor, 490 U.S. 386, 394-95 (1989); Brown v. Borough of Chambersburg, 903 F.2d 274, 277 (3d Cir. 1990).  Notably, police officers are privileged to commit a battery pursuant to a lawful arrest, but that privilege is negated by the use of excessive force.  See Edwards v. City of Phila., 860 F.2d 568, 572 (3d Cir. 1988).  In other words, when a police officer uses force to effectuate an arrest, the force must be reasonable under the particular circumstances of the arrest at issue.  See Graham, 490 U.S. at 396.  Correspondingly, the courts must judge the reasonableness of particular force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.  Specifically, the reasonableness of the officer's use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety

---

[10]  Presence of two officers at the scene creates liability of one officer for the actions of another.  See Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002) ("An officer may be held liable not only for his personal use of excessive force, but also for his failure to intervene in appropriate circumstances to protect an arrestee from the excessive use of force by his fellow officers"); Galantino v. Formica, 1989 U.S. Dist. LEXIS 14832, at *2 (E.D. Pa. Dec. 13, 1989) ("A police officer, whether supervisory or not, who 'fails or refused to intervene when a constitutional violation such as an unprovoked beating takes place in his presence' is subject to liability under 42 U.S.C. § 1983") (citing Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986))).  Here, Plaintiff asserts that Martin and Bertone were about thirty feet away from the physical place of the arrest.  Therefore, the determination of whether Martin and Bertone were "at the scene" is a factual determination requiring a record more extensive than that created by Plaintiff's pleadings.

of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. The reasonableness inquiry is objective, but it should give appropriate consideration to the circumstances of the police action, which are often "tense, uncertain, and rapidly evolving." Id. at 397.

10.   Here, Plaintiff's filings paint a picture of him being senselessly attacked and continuously beaten by Anderson, Stine and Farrel, with Martin and Bertone being just a few feet away. While Plaintiff's allegations appear contradictory to his claim that he was charged with assaulting Stine during the process of arrest, for the purposes of judicial sua sponte review of the initial pleading, Plaintiff's excessive force claims meet the plausibility standard posed by Rule 8, as interpreted by Iqbal. Hence, with regard to Plaintiff's excessive force challenges only, *except* for his excessive force challenges based on the allegedly tight handcuffs,[11] the Court finds it warranted to direct service.

---

[11]   In Kopec v. Tate, 361 F.3d 772 (3d Cir. 2004), the Court of Appeals reversed the grant of summary judgment dismissing claims based on unduly tight handcuffs, but cautioned that its "opinion should not be overread as [the Court did] not intend to open the floodgates to a torrent of handcuff claims." Id. at 777. The plaintiff in Kopec contended he was in extreme pain, which was obvious to the arresting officer since the arrestee was screaming of pain, begging to have his handcuffs loosen and, eventually, fainted from the pain, falling on the ground. See id. at 774. Moreover, the Kopec plaintiff alleged that the handcuffs caused him permanent nerve damage in one wrist, and a surgeon treated him for that injury for over one year, starting virtually immediately after the arrest. See id. at 774. The Court of Appeals stressed that, where the plaintiff does not inform the arresting officers about the pain from handcuffs (or where the plaintiff "informs" the officers of handcuffs being too tight by such ambiguous "statements" as sighing, uttering minor complaints or singing religious songs) or where the plaintiff needs no swift medical attention to his injuries caused by handcuffs, claims based on unduly tight handcuffs fail. See, e.g., Gilles v. Davis, 42 F.3d 197 (3d Cir. 2005). Here, Plaintiff merely asserted that the handcuffs were applied in a fashion that Plaintiff felt "immobilized" (even though it seems that the handcuffs had to be applied exactly with the goal of "immobilization," that is, preventing Plaintiff's escape and/or resistence), and he claims that he suffered the sensation of "numbness" in his hands or arms for six weeks or so after the arrest. See Docket Entry No. 4, at 9. Since Plaintiff's injuries were not comparable to those addressed in Kopec,

IT IS, THEREFORE on this 17th day of September , 2012,

ORDERED that Plaintiff's motion, Docket Entry No. 5, seeking restoration of this matter to the Court's active docket, is granted; and it is further

ORDERED that the Clerk shall reopen this matter by making a new and separate entry on the docket reading "CIVIL CASE REOPENED"; and it is further

ORDERED that Plaintiff's claims against John Doe are dismissed, and the Clerk shall terminate John Doe as Defendant in this matter; and it is further

ORDERED that Plaintiff's challenges based on the circumstances of his arrest and on the taking of the 2006 Hyundai Santa Fe SUV are dismissed for failure to state a claim upon which relief can be granted; and it is further

ORDERED that Plaintiff's challenges based on the allegedly too tightly applied handcuffs are dismissed for failure to state a claim upon which relief can be granted; and it is further

ORDERED that Plaintiff's challenges alleging excessive force by Defendants Anderson, Stine, Farrell, Martin and Bertone (through acts of Anderson, Stine, Farrell, Martin and Bertone other than the act of placing Plaintiff in handcuffs) shall proceed past the sua sponte dismissal stage; and it is further

---

and he did not inform the officers of the handcuffs being too tight (and he did not request any loosening of them), or that he needed immediate medical attention (and no later medical attention) to his alleged injuries ensuing from the handcuffs, his excessive force challenges based on the mode of usage of handcuffs facially fail to state a cognizable claim.

Page 14 of  16

ORDERED that, pursuant to 28 U.S.C. § 1915(d), the Clerk shall issue summons, and the United States Marshal shall serve copies of the Complaint, summons, and this Memorandum Opinion and Order upon Defendants Anderson, Stine, Farrell, Martin and Bertone, pursuant to 28 U.S.C. § 1915(d); and it is further

ORDERED that served Defendants shall file and serve a responsive pleading within the time specified in Federal Rule of Civil Procedure 12, pursuant to 42 U.S.C. § 1997e(g)(2); and it is further;

ORDERED that, pursuant to 28 U.S.C. § 1915(e)(1) and § 4(a) of Appendix H of the Local Civil Rules, the Clerk shall notify Plaintiff of the opportunity to apply in writing to the assigned judge for the appointment of pro bono counsel in accordance with the factors set forth in Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994), which sets forth the requirements for eligibility for appointment of pro bono counsel.  Plaintiff is expressly advised that such appointment is neither guaranteed nor automatic; and it is further

ORDERED that the Clerk shall enclose with such notice a copy of Appendix H and a form Application for Appointment of Pro Bono Counsel; and it is further

ORDERED that, if at any time Plaintiff seeks the appointment of pro bono counsel, pursuant to Fed. R. Civ. P. 5(a) and (d), Plaintiff shall (1) serve a copy of the Application for Appointment of Pro Bono Counsel by regular mail upon each Defendant.  If Defendants are unknown at the time of such application, service shall be made upon the Attorney General for the State of New Jersey, and (2) file a Certificate of Service with the Application for Pro Bono Counsel; and it is finally

ORDERED that the Clerk of the Court shall serve a copy of this Memorandum Opinion

and Order upon Plaintiff by regular U.S. mail.


s/Susan D. Wigenton, U.S.D.J.
**Susan D. Wigenton**
**United States District Judge**