NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN B. TRAINER,<br><br>        Plaintiff,<br><br>  v.<br><br>CLIFTON PD DETECTIVE ROBERT ANDERSON, WAYNE STINE, and STEVEN FARRELL; LODI PD DETECTIVES JUSTIN BERTONE and SGT. VINCENT MARTIN; KEARNY PD DETECTIVE MICHAEL GONZALES,<br><br>        Defendant. | Civil Action No. 12-2409 (SDW)(SCM)<br><br>**OPINION**<br><br>March 13, 2015 |

**WIGENTON,** District Judge

  Before the Court are the summary judgment motions of Detectives Robert Anderson ("Anderson"), Wayne Stine ("Stine"), and Steven Farrell ("Farrell") of the Clifton Police Department, and Detectives Justin Bertone ("Bertone") and Vincent Martin ("Martin") of the Lodi Police Department (collective "Defendants") pursuant to Federal Rule of Civil Procedure 56.[1] Jurisdiction and venue are proper in this Court under 28 U.S.C. § 1441 and 28 U.S.C. § 1391(b), respectively. This motion is decided without oral argument as permitted under Federal Rule of

---

[1] There were three summary judgment motions filed amongst the five defendants remaining in this matter: Dets. Bertone and Martin filed a joint motion (ECF No. 88), while Dets. Stine and Anderson each filed separate motions. (ECF No. 90 and 91). In lieu of filing a separate motion for summary judgment, counsel for Det. Farrell indicated in a letter dated August 22, 2014 that Det. Farrell will "join in all co-defendants' motions for summary judgment, for all the reasons set forth in those motions." (See ECF#104-5, Plaintiff's Br. at 2). This Court will permit Det. Farrell to join his co-defendants' motions over Plaintiff's objection as Dets. Anderson, Farrell, and Stine are charged with the same misconduct emanating from the same facts.

Civil Procedure 78. For the reasons that follow, this Court **GRANTS** Defendants' motions for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the detention and arrest of Plaintiff, Steven B. Trainer ("Plaintiff" or "Trainer"), by Detectives Anderson, Stine, and Farrell of the Clifton Police Department, Detectives Martin and Bertone of the Lodi Police Department, and Detective Michael Gonzales[2] of the Kearny Police Department. Plaintiff is currently incarcerated in East Jersey State Prison in Rahway, New Jersey and is proceeding pro se. Plaintiff has brought suit under 42 U.S.C. § 1983 against the arresting officers alleging, inter alia, the use of excessive force to effectuate his arrest in violation of his Fourth Amendment rights. (ECF No. 1).

On December 17, 2010, Anderson, Stine, Farrell, Martin, and Bertone arrested Trainer on suspicion of committing multiple robberies in Lodi, Clifton, and Bloomfield, New Jersey. (Defendants' Martin and Bartone's Statement of Undisputed Material Facts "Defs. Martin and Bartone SOF" ¶ 2.) The parties provide differing accounts of the events leading up to Plaintiff's arrest.

According to Anderson's police report, at approximately 10:00 a.m. on December 17, 2010, after waiting outside Trainer's residence for about thirty minutes in two unmarked police vehicles (with Anderson, Stine, and Farrell in one vehicle and Martin and Bertone in another), the arresting officers saw Trainer exiting his residence with two large laundry bags. (Certification of Nicholas Greico "Greico Cert." Ex. D, Anderson's Police Report, p. 4). Trainer set the bags down outside the door, and began walking towards a parked 2006 Hyundai Santa Fe SUV that he had

---

[2] Det. Michael Gonzales was not listed as a defendant in Plaintiff's amended complaint filed June 4, 2012 and has therefore been terminated from this case. (ECF No. 4).

been known to drive. (Id.) As Plaintiff approached the side door of the Santa Fe, Anderson, Stine, and Farrell drove their vehicle closer to Plaintiff, exited with their badges displayed, identified themselves as law enforcement officers, and advised Plaintiff that he was under arrest. (Id.) Plaintiff immediately began to reach his hands towards his waistband. (Id.) Given Trainer's history of violent crimes and weapons-related convictions and the officers' knowledge that offenders often conceal deadly weapons in their waist band, the officers tackled Plaintiff to the ground to prevent him from accessing his waist band. (Id.)

In restraining Plaintiff, Stine "utilized Strikes [sic], arm bar and take down techniques while Det. Farrell and Det. Anderson assisted." (Greico Cert. Ex. E, Stine's Police Report). While on the ground, Plaintiff allegedly continued to resist the officers' efforts to pull his right hand away from his waist area for several moments. (Id.) During the struggle, Plaintiff allegedly struck Stine about the chest area with his right fist and elbow, while stating "I'm not going back to jail." (Id.) Consequently, Plaintiff was charged with aggravated assault on a law enforcement officer and resisting arrest, in violation of N.J.S.A. 2C:12-1B(5)(A) and 2C:29-2A(3)(A) respectively. (Id.) After successfully restraining Plaintiff, officers retrieved a small quantity of marijuana from Plaintiff's waistband. (Greico Cert. Ex. D). Furthermore, after Plaintiff was taken into custody, the Hyundai Santa Fe was towed from the scene as it was believed to be the vehicle Plaintiff used in the commission of the robberies.[3] (Id.; Greico Cert. Ex. E).

By contrast, Plaintiff alleges that when he exited his residence and headed toward his vehicle, Anderson, Stine, and Farrell's unmarked vehicle sped towards him from behind and

---

[3] Based on statements from victims and witnesses, Plaintiff would drive up next to his targets and grab their purses through the driver's side window before swiftly driving away, sometimes dragging the victim to the ground as a result. (ECF No. 4, Amended Complaint at 5). Investigators determined the make and model of the vehicle Plaintiff used in the commission of the robberies from surveillance footage of one of the robberies which occurred near a camera-equipped shopping unit. (Greico Cert, Ex. D).

without warning. (Plaintiff's Statement of Undisputed Material Facts "Pl. SOF" ¶ 13). Plaintiff claims that he was struck by the police vehicle and knocked to the ground when one of the officers intentionally opened the passenger side car door closest to Plaintiff while the vehicle was still moving. (Id.)

According to Plaintiff, although he had been knocked to the ground before the defendants fully exited their vehicle, he was needlessly tackled and pinned to the ground by the three officers. (Pl. SOF ¶ 14). Plaintiff further asserts that despite being fully immobilized, handcuffed, and unable to resist arrest, Anderson, Farrell, and Stine repeatedly punched and kicked him in the face and body for several minutes while Martin and Bertone watched from their unmarked vehicle which was parked across the street but in clear view of the alleged beating. (Pl. SOF ¶¶ 14, 17, 18). Plaintiff also claims that when Martin eventually joined the other officers at the scene, he examined Plaintiff's facial injuries and laughingly stated to Anderson, Farrell, and Stine, "I thought you guys wanted to lump him up. Never send a boy to do a man's job." Id. ¶ 16. Plaintiff was examined on the day of his arrest by paramedics who noted the following injuries: "Head: Swelling, Bleeding. Findings: Bleeding from abrasions under the left eye, right side of the head, left side of the head, contusion over the right eye." (Greico Cert., Ex. G). Plaintiff refused care but his wounds were cleaned with sterile water. Id.

Ultimately, Plaintiff pled guilty to two counts of second degree robbery and one count of third degree theft, and received a sentence of nine years. (Certification of Harry D. Norton "Norton Cert.", Ex. M, Judgment of Conviction).

On April 24, 2012, Plaintiff filed a complaint under 42 U.S.C. §1983 alleging that Anderson, Stine, Farrell, Martin, and Bertone violated his Fourth Amendment right by: (a) executing his arrest without probable cause; (b) subjecting him to excessive force; and (c) unduly

4

taking possession of the 2006 Hyundai Santa Fe SUV. (ECF No. 4, p. 12-13). While Plaintiff does not allege that Martin and Bertone participated in the alleged use of excessive force, he maintains that they observed but did not interfere with the alleged assault. (Id.) On September 17, 2012, this Court assessed the sufficiency of Plaintiff's complaint as mandated by the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-77 (April 26, 1996) and issued an Opinion and Order dismissing for failure to state a claim upon which relief can be granted Plaintiff's challenges based on: (1) the circumstances of his arrest (i.e. the validity of the arrest warrant); (2) the taking of the 2006 Hyundai Santa Fe SUV[4]; and (3) allegedly tight handcuffs. (ECF No. 6, p. 14). Defendants now move for summary judgment on the remainder of Plaintiff's claims, which are: (1) excessive force claims against Defendants Anderson, Stine and Farrell, and (2) failure to intervene claims against Defendants Martin and Bertone.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." Id. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for

---

[4] This Court dismissed Plaintiff's claim regarding the taking of the 2006 Hyundai Santa Fe SUV because (1) he is not the registered owner of the vehicle and therefore had no vested property interest therein; (2) he presented no evidence that the registered owner is incapable of prosecuting the seizure on her own behalf; and (3) even if this Court were to presume that Plaintiff was in rightful possession of the vehicle, the taking did not offend the Fourth Amendment as it was a seizure of evidence in plain sight incident to Plaintiff's arrest.

the nonmoving party." Id. The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary judgment motion must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" Lawrence v. National Westminster Bank New Jersey, 98 F.3d 61, 65 (3d Cir. 1996) (quoting Anderson, 477 U.S. at 248). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." Black Car Assistance Corp. v. New Jersey, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element

6

essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

**DISCUSSION**

I. Plaintiff's Excessive Force Claims against Officers Anderson, Stine, and Farrell

Pursuant to 42 U.S.C. § 1983,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. "Section 1983 provides private citizens with a means to redress violations of federal law committed by state individuals." Woodyard v. Cnty. of Essex, 514 F. App'x 177, 180 (3d Cir. 2013). To assert a § 1983 claim, "a plaintiff 'must establish that [he] was deprived of a federal constitutional or statutory right by a state actor.'" Id. (quoting Kach v. Hose, 589 F.3d 626, 646 (3rd Cir. 2009)).

In adjudicating the merits of a § 1983 claim, a court begins by identifying "the exact contours of the underlying right said to have been violated" and then determining "whether the plaintiff has alleged a deprivation of a constitutional right at all." Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (internal quotation omitted). The Fourth Amendment prohibits the use of excessive force during the course of an arrest. Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct.

7

1865, 104 L.Ed.2d 443 (1989); Orsatti v. N.J State Police, 71 F.3d 480, 482 (3d Cir. 1995). Plaintiff alleges that by knocking him to the ground with their vehicle and punching and kicking him, Officers Anderson, Stine, and Farrell used force beyond that necessary to effectuate his arrest in violation of the Fourth Amendment (Pl. Br. p. 6).

Claims of excessive force by police officers, in the context of an arrest, investigatory stop, or other "seizure," should be analyzed under the Fourth Amendment. Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004); Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To state a claim for excessive force under the Fourth Amendment, a plaintiff must show that a "seizure" occurred and that it was unreasonable. Curley v. Klem, 499 F.3d 199, 203 (3d Cir. 2007). The test of Fourth Amendment reasonableness of force used during seizure is whether, under the totality of the circumstances, officers' actions are objectively reasonable in light of facts and circumstances confronting them, without regard to their underlying intent or motivations. Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004); Graham, 490 U.S. at 397. An excessive force claim must be evaluated from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Rivas, 365 F.3d at 198; Lamont v. New Jersey, 637 F.3d 177, 2011 WL 753856, at *5 (3d Cir. 2011) ("Monday morning quarterbacking is not allowed"). While the absence of physical injury does not necessarily signify that the force was not excessive, excessive force claims must be so egregious as to be constitutionally excessive, and the presence of some physical injury is relevant to that determination. Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

The Supreme Court has instructed that this fact-sensitive inquiry must be conducted on a case-by-case basis. Tennessee v. Garner, 471 U.S. 1, 8 (1985). To that end, the Court articulated three factors that must be considered in determining whether the use of force was reasonable in a

8

given case: 1) the severity of the crime at issue, 2) whether the suspect poses an imminent threat to the safety of the police or others in the vicinity, and 3) whether the suspect attempts to resist arrest or flee the scene. Id.  In Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997), the Third Circuit expanded the inquiry to include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."

Defendants do not dispute that they used force in effectuating Trainer's arrest,[5] rather, they contend that the amount of force applied was reasonable under the attendant circumstances. In fact, there is virtually no factual dispute between the parties as to the actual force used; the only material disagreement between the parties is whether the application of force was provoked by Plaintiff's actions. Defendants maintain that when they noticed Plaintiff approaching the driver side door of his vehicle, they "took the fastest means at their disposal to accomplish a speedy arrest before flight could be attempted." (Anderson Br. p. 7).  Defendants aver that Plaintiff posed a flight risk because he was on parole and stood to have his parole revoked, and given his lengthy history of violent crimes and the violent nature of the offenses for which he was being arrested, Plaintiff faced another long prison sentence. (Id.) Defendants maintain that they anticipated violent resistance from Plaintiff for the same reasons and wore "body armor" to protect themselves. (Id.) More to the point, Defendants posit that they forcibly restrained Plaintiff in accordance with their training because: (1) Plaintiff reacted to police presence by reaching towards his waistband, causing the officers to fear that he was armed; (2) Plaintiff physically resisted the officers' attempts

---

[5] Defendants do dispute Plaintiff's contention that he was knocked to the ground by Officers Anderson, Stine, and Farrell's unmarked vehicle, intentionally or otherwise. (Anderson Br. P. 7).

to handcuff him; and (3) did not comply with verbal orders for him to stop resisting arrest. Defendants consequently contend that they are entitled to qualified immunity.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985). Under this doctrine, "officers performing discretionary functions are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Curley, 298 F.3d at 277 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)). It is preferable for a court to determine whether an official's conduct is subject to qualified immunity at the summary judgment stage of a proceeding. Carswell v. Borough of Homestead, 381 F.3d 235, 241 (3d Cir. 2004).

In reviewing the merits of a claim of qualified immunity, a court must conduct a multi-step inquiry. First, it must determine whether "the facts alleged show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001); see also Hope v. Pelzer, 536 U.S. 730, 736, 153 L. Ed. 2d 666, 122 S. Ct. 2508 (2002); Donahue v. Gavin, 280 F.3d 371, 378 (3d Cir. 2002) (explaining that a court "must 'determine first whether the plaintiff has alleged a deprivation of a constitutional right at all' when a government official raises qualified immunity as a defense to an action under § 1983" (quoting County of Sacramento v. Lewis, 523 U.S. 833, 842 n.5, 140 L. Ed. 2d 1043, 118 S. Ct. 1708 (1998))). If the facts, when viewed in the light most favorable to the plaintiff, do not show that the officer violated a constitutional right, then plaintiff's § 1983 claim fails. Curley, 298 F.3d at 277.

Contrary to Trainer's contention that this Court may not, on summary judgment, "decide whether the type, amount and duration of the force used was reasonable", the Third Circuit has

recognized that summary judgment is proper and a grant of qualified immunity is warranted in §1983 suits if no reasonable factfinder could conclude that the Defendant police officers violated Plaintiff's clearly established rights. Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000). In reviewing whether an officer's conduct violated a clearly established right, a court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201 (citing Wilson, 526 U.S. at 615); see also Sterling v. Borough of Minersville, 232 F.3d 190, 193 (3d Cir. 2000).

Viewing the facts in the light most favorable to Trainer, no reasonable factfinder could conclude that the actions of the Defendant police officers were objectively unreasonable given the facts and circumstances confronting them. Plaintiff's contention that he was totally compliant during the course of his arrest is at odds with the fact that he was charged with resisting arrest and assaulting a law enforcement officer immediately following his arrest. (Greico Cert. Ex. E). "Once the police officer informs the arrestee that he is under arrest, anything short of complete acquiescence and cooperation could reasonably be believed by the police officer as a form of resistance." Leporace v. City of Philadelphia, Civ. A. No. 96-6363, 1998 U.S. Dist. LEXIS 8627, at *16-17 (E.D. Pa. June 9, 1998); see also United States v. Montoya de Hernandez, 473 U.S. 531, 542, 87 L. Ed. 2d 381, 105 S. Ct. 3304 (1985) ("Authorities must be allowed to graduate their response to the demands of any particular situation." (internal quotation omitted)). Under the circumstances, the officers were required to use such force as was necessary to effect the arrest. Furthermore, the Garner and Sharrar factors compel a finding that the officers' use of force was justified: (1) Plaintiff was the main suspect in a rash of violent purse snatchings; (2) Plaintiff gave the officers good cause to believe that he posed an imminent threat to the safety of the police and

11

others when he reached for waistband as the officers approached him;[6] (3) Plaintiff had a lengthy history of violent crimes, was on parole, and stood to have his parole revoked as a result of his arrest; (4) given that Plaintiff was near his vehicle, it was imminently possible that he would attempt to flee and/or lead law enforcement on a dangerous high-speed car chase; (5) lastly, the struggle to restrain Plaintiff lasted between 30 to 40 seconds. For these reasons, Anderson, Stine, and Farrell's actions are protected by qualified immunity and their motions for summary judgment will be granted.

    II.    <u>Plaintiff's Failure to Intervene Claims against Officers Martin and Bertone.</u>

Because Plaintiff's excessive force claims cannot survive summary judgment, his failure to intervene claims against Martin and Bertone are necessarily moot. Therefore, Martin and Bertone's motion for summary judgment is granted.

**CONCLUSION**

For the reasons set forth above, the defendants' motions for summary judgment are **GRANTED.** A corresponding order follows.

s/ <i>Susan D. Wigenton</i><br>
**SUSAN D. WIGENTON**<br>
**UNITED STATES DISTRICT JUDGE**

Orig:  Clerk
cc:    Magistrate Judge Steven C. Mannion

---

[6] Defendants believe that Plaintiff had been attempting to discard the pack of Newport cigarettes containing marijuana that was discovered underneath Plaintiff's body after he was restrained. Plaintiff maintains that the marijuana did not belong to him as he does not smoke Newport cigarettes. (Greico Cert. Ex. B, Trainer Dep. 76:9-77:4).